## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ETHEL WILSON LANE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:14-CV-02514-AJB** |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| ***Acting Commissioner, Social*** | : | |
| ***Security Administration,*** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Ethel Wilson Lane ("Plaintiff") brought this action pursuant to

sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and

1383(c)(3), to obtain judicial review of the final decision of the Acting Commissioner

of the Social Security Administration ("the Commissioner") denying her applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  [*See* Dkt. Entries dated 11/19/2014].  Therefore, this Order constitutes a final Order of the Court.

("SSI") under the Social Security Act.[2]   For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 21, 2011, alleging disability commencing on November 1, 2010.   [Record (hereinafter "R") 36].[3]   Plaintiff's applications were denied initially and on reconsideration.   [*Id.*].   Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on August 12, 2013.   [R50-67].   The ALJ issued a decision on September 10,

---

[2]   Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq.*   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income Benefits for the disabled.   Title XVI claims are not tied to the attainment of a particular period of insurance disability.   *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.   *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

[3]   The parties do not object to the ALJ's recitation of the procedural history. [*See* Docs. 11, 12].

2

2013, finding that Plaintiff was not disabled. [R36-45]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on June 11, 2014, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed an action in this Court on August 4, 2014, seeking review of the Commissioner's decision. [*See* Docs.1, 2]. The answer and transcript were filed on February 2, 2015. [Docs. 6-7]. On March 6, 2015, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 10], and on April 6, 2015, the Commissioner filed a response in support of the decision, [Doc. 11]. Plaintiff did not file a reply brief, nor did the parties seek oral argument. (*See* Dkt.). The matter is now before the Court upon the administrative record and the parties' pleadings and briefs, and is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   STATEMENT OF FACTS

### A.   Background

Plaintiff was 47 years old on the alleged onset date of disability and 50 years old at the time of the administrative hearing. [R43, 136]. Plaintiff has a bachelor's degree

3

in accounting and an MBA in supply chain management, and past relevant work as a tax accountant.  [R56-57].

### B.     Medical Records

The medical record reflects that Plaintiff was treated by Dr. Daniel Gerhardt at Stockbridge Family Chiropractic, Inc., from April 2006 through July 2011, where she was treated primarily for neck and back pain.  [R301-08].

In February 2011, Plaintiff received treatment from Casimir Okoro, M.D., and reported frequent night time cough and congestion.  [R256].  She was diagnosed with acute extrinsic asthma allergic rhinitis, and diabetes mellitus.  [R257].  Dr. Okoro prescribed oral medications and inhalers.  [*Id*.].  She continued treatment with Dr. Okoro through July 2011.  [R250-57].

Plaintiff presented to the emergency room at Grady Hospital on several occasions in May 2011with complaints of knee pain stemming from a fall down some stairs.  [R276-78; 283-90].  An x-ray revealed irregularity of the fibular head medially and a probable small suprapatellar joint effusion.  [R287].  Plaintiff was treated again at Grady in July 2011 for left knee pain.  [R275].  It was noted that she had decreased range of motion in the left knee as well as a positive straight leg raise.  [*Id*.].  X-rays

AO 72A
(Rev.8/8
2)

revealed minimal osteoarthritis in the left knee.  [*Id.*].  Plaintiff was given a steroid injection in her left knee.  [*Id.*].

Plaintiff went to the Grady emergency room on September 7, 2011 with complaints of shortness of breath.  [R344].  On physical exam, it was noted that Plaintiff had normal breath sounds with no wheezing or prolonged expiratory phase.  [R346].  X-rays showed that her lung volumes were low, but that there was no electrolyte abnormalities.  [R347].  On discharge, Plaintiff was diagnosed with COPD exacerbation and it was noted that her breathing was improving, her lungs were clear to auscultation and the remainder of her exam was unremarkable.  [R344].

On September 27, 2011, Plaintiff saw Scott A. Duncan, Psy.D., of Atlanta Forensic Mental Health Institute, for a consultative psychological examination.  [R309-16].  She reported that she was not receiving any mental health treatment at the time, but had scene a psychologist a year ago who told her she was depressed.  Dr. Duncan noted that she was not taking any medications and had not had inpatient mental health care.  She described her main problems as difficulty "getting going" and lack of concentration, which Dr. Duncan attributed to the medicines she was taking for her physical ailments.  [R310].  She reported to Dr. Duncan that she was only limited by her physical issues and medication side-effects.  [*Id.*].  Dr. Duncan observed that

5

Plaintiff did not display significant difficulty with maintaining attention and sustained concentration. [R316]. He opined that Plaintiff would not have significant trouble understanding simple directives effectively or have trouble recalling them; no significant difficulty meeting expected job requirements; no significant trouble carrying out directives; and no significant difficulty relating to people. [*Id*.]. Dr. Duncan diagnosed Plaintiff with somatization disorder. [R315].

On September 29, 2011, Diane Kogut, Ph.D, of the Disability Determination Services ("state agency") completed a Psychiatric Review Technique Form in which she found Plaintiff to have mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. [R332]. Dr. Kogut also completed a Mental Residual Functional Capacity ("RFC") Assessment in which she found that Plaintiff did not have any limitation in understanding and memory, was moderately limited in the ability to maintain attention and concentration for extended periods, was moderately limited in the ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, had no limitation in social interaction, was moderately limited in the ability to respond appropriately to changes in the work setting, and was

6

moderately limited in the ability to set realistic goals or make plans independently of others.  [R336-37].

In October 2011, Plaintiff underwent a pulmonary function test in which sprirometry testing revealed a pre-bronchodilator FEV1 of 2.40, 68% of the predicted normal value and a post-bronchodilator FEVI of 2.44, 69% of the predicted normal value.  [R353].  Gloria Westney, M.D. signed the results and noted that the testing suggested a restrictive ventilatory defect and reduced lung volume.  [R354].

Plaintiff was hospitalized at Grady from December 4, 2011 to December 9, 2011 with complaints of shortness of breath.  [R358].  A chest x-ray showed no evidence of acute cardiopulmonary abnormality.  [R364].  She was diagnosed as having shortness of breath; diabetes mellitus, which was noted to be uncontrolled; gastroesophageal reflux disease ("GERD"), which was noted to be stable; and osteoarthritis, which was noted to be stable.  [R364-65].

In January 2012, Plaintiff underwent a bronchoscopy due to chronic cough and was diagnosed with reactive airway disease and chronic inflammation.  [R432-33].  In a follow up visit in May 2012, it was noted that Plaintiff gets symptomatic relief from inhalers and her diabetes had improved from her last visit since adjustments were made to the medication.  [R428-29].

7

On May 30, 2012, Plaintiff was treated for left lateral hip pain. [R442]. An x-ray of the pelvis did not show any evidence of arthritic changes of the hip joint. [R443]. Plaintiff was given a steroid injection which provided immediate pain relief. [*Id*.]. In a follow up appointment in August, Plaintiff reported that her hip pain was not as bad as it used to be and a steroid injection was deferred. [R457]. In November 2012, it was also recommended that the steroid injection be deferred although she did have discomfort in the hip bursa. [R453].

Plaintiff was treated for shortness of breath in February 2013 and it was noted on physical examination that Plaintiff had normal breath sounds with no crackles or wheezing. [R490, 492].

Plaintiff began physical therapy for her knee and hip pain in March 2013. [R497].

Another pulmonary function test was conducted in May 2013 in which it was noted that Plaintiff's best FEV1 was .91, 30% of the predicted normal value. [R580]. The report also indicates that the "interpretation is valid only upon physician review and signature," and a physician's signature was lacking. [*Id*.].

Plaintiff was treated at Grady in June 2013 due to complaints of worsening shortness of breath, possibly due to weather change when she traveled to Florida the

8

previous week.  [R546-50].  A chest x-ray from June 2013 showed no acute cardiopulmonary abnormality.  [R549].

### C.    Evidentiary Hearing Testimony

At the hearing, Plaintiff testified that she is 5'10" tall and weighs 262 pounds. [R55].  She lives alone.  [R56].  She previously worked as a tax accountant, but has not worked since November 2010.  [R56-57].

Plaintiff testified that she believed she was disabled due to her breathing, neck pain, and pain in her left leg and hip.  [R57].  She stated that her medication keeps her drowsy.  [*Id*.].  She described that her breathing problems first began in 1987 when she worked in a chemical plant and was exposed to toxins.  [*Id*.].  At the time of the hearing, her symptoms included shortness of breath and sensitivity to the atmosphere, chemicals, and perfumes.  [R58].  Plaintiff stated that she also has a really bad dry, hacking cough which makes it hard to communicate.  [R62].  She explained that she uses a steroid inhaler, nebulizer, and nasal sprays.  [R58].  She was prescribed oxygen, but has not had the financial ability to obtain an oxygen tank.  [*Id*.].

Plaintiff reported that symptoms of her diabetes include blurred vision, frequent urination, thirst, and the inability to process information which leads to frustration. [R58, 59].

9

Regarding her pain in the left knee and left hip, Plaintiff testified that she was in 11 automobile accidents and has a herniated disc in her neck. [R59]. She stated that her pain medication eases the pain, but it makes her not functional. [R60]. She uses a walking stick and has been using it since May 2011 when she broke her leg. [*Id.*]. Plaintiff testified that she gets stiff when sitting for prolonged periods of time. [*Id.*]. She cannot walk a block and can walk up to five minutes; she also cannot stand for very long. [*Id.*]. She spends half the day lying down. [R61].

Plaintiff testified that her children come over and clean for her, and that she cooks things that she can put in a pot and cook themselves. [*Id.*]. She stated that one of her children is constantly with her everyday. [*Id.*].

The vocational expert ("VE") testified that Plaintiff's past work as a tax accountant is classified as sedentary exertion and highly skilled. [R63-64]. The VE testified that a hypothetical person with Plaintiff's age, education and previous work experience, who could perform work at the light exertional level with the following limitations – never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; required the use of a handheld assistive device to walk over long distances or uneven terrain; avoid moderate exposure to fumes, odors, dust, gases or poor ventilation; understand, remember and carry out

10

simple instructions only; and be limited to routine superficial public contact such as that of a grocery checker – could not perform Plaintiff's past work, but could perform the job of laboratory sample carrier, cotton roll packer, and a small product assembler I. [R64-65].

The VE then testified that if the hypothetical person had all the limitations as noted above, but is additionally limited to sedentary work and is between the ages of 47 and 49, that person would be able to perform work as a microfilm document preparer and an escort vehicle driver.  [R65].  The VE testified that if the hypothetical person had all the limitations in the second hypothetical with the additional limitation that the person be allowed two hours of recumbent rest, that person could not perform any work.  [R65-66].  Relying again on the second hypothetical and the individual would require a minimum of two additional work breaks at unpredictable times to administer breathing treatments, each break lasting a minimum of 15 minutes, the VE testified that that person also could not perform any work.  [R66].

**III.   ALJ'S FINDINGS OF FACT**

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

11

2.     The claimant has not engaged in substantial gainful activity since November 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: diabetes mellitus, asthma/chronic obstructive pulmonary disease/reactive airway disease, closed left fibula fracture, osteoarthritis, hypertension, gastroesophageal reflux disorder (GERD), somatoform disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a significant range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: The claimant can never climb ladders, ropes, and scaffolds. She is capable of occasionally climbing ramps and stairs and balancing, stooping, kneeling, crouching, and crawling. She requires the use of a handheld assistive device over long distances and uneven terrain. She must avoid moderate exposure to fumes, odors, dusts, gasses, and poor ventilation. She is limited to understanding, remembering, and carrying out simple instructions. In addition, she is limited to routine, superficial public contact only.

12

. . .

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.    The claimant was born on July 21, 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969, and 416.969(a)).

. . .

11.   The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2010 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[R38-45].

13

In support of the decision, the ALJ found that Plaintiff has mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence or pace.  [R39-40].

With regard to the RFC, the ALJ first discussed Plaintiff's allegations and the hearing testimony.  [R41].  However, the ALJ found that the longitudinal medical evidence of record does not fully support Plaintiff's allegations of disability.  [*Id*.].  The ALJ identified Plaintiff's history of impairments, but noted that her main problems in functioning stem from a history of breathing problems.  [*Id*.].  The ALJ discussed Plaintiff's February 8, 2011 treatment with Dr. Okoro in which Plaintiff was diagnosed with acute asthma, diabetes mellitus, and allergic rhinitis; she was prescribed oral medications and inhalers; and sprirometry testing showed some reduced pulmonary functioning that were nowhere near the listing level.  [*Id*.].  The ALJ discussed Plaintiff's May 25, 2011 emergency room visit where she was diagnosed with COPD and diabetes mellitus and told to follow up for orthopedic care.  [*Id*.].  The ALJ also noted that Plaintiff's x-rays from July 2011 revealed early osteoarthritic changes and small suprapatellar effusion in the left knee.  [*Id*.].

The ALJ discussed Plaintiff's psychological consultative examination with Dr. Duncan and noted that Plaintiff's GAF score was 65, indicating only mild

14

symptoms and ability to function pretty well with some meaningful interpersonal relationships.  [R41-42].  The ALJ further noted that Dr. Duncan noted that Plaintiff ambulated well, suggesting that her left leg fracture was not that severe.  [R42].

The ALJ discussed Plaintiff's January 17, 2012 visit to Grady where a bronchoscopy revealed negative findings for pneumothorax and she was diagnosed with ongoing reactive airway disease.  [*Id.*].  The ALJ noted that Plaintiff followed up in May 2012 for treatment of her reactive airway disease and the treatment notes indicated that she received symptomatic relief with the use of inhalers and that her GERD, diabetes, and hypertension were controlled with medication management.  [*Id.*]. The ALJ recounted that although Plaintiff complained of left hip pain on May 30, 2012, radiographs showed normal findings with no evidence of arthritic changes, and follow up examinations in August and November showed continued symptom relief for left hip pain.  [*Id.*].

The ALJ discussed Plaintiff's June 7, 2013 hospitalization in which she was diagnosed with ongoing reactive airway disease.  [*Id.*].  The ALJ noted that pulmonary function tests were performed but appeared to be invalid as they were not signed by a medical doctor.  [*Id.*].  The ALJ noted that Plaintiff was told to follow up with her primary care physician in one month, which the ALJ interpreted as suggesting that her

15

symptom management only required conservative and routine care; moreover, the ALJ noted that the record does not reflect follow-up treatment after June 2013. [*Id*.]. The ALJ thus concluded that the objective medical findings show that Plaintiff's symptoms are well controlled with only conservative treatment. [*Id*.].

In discussing precipitating and aggravating factors, the ALJ considered Plaintiff's obesity and stated that any limitations that arise from this condition are reflected in the RFC. [*Id*.]. The ALJ also considered Plaintiff's daily activities in analyzing Plaintiff's credibility and noted that Plaintiff lives alone, has little problems with basic self-care needs, and is capable of preparing simple meals, performing light household chores, driving, and shopping in public stores. [R42-43]. The ALJ thus determined that the activities show good functioning ability consistent with the RFC. [R43].

With regard to the opinion evidence, the ALJ gave great weight to the opinions of Dr. Duncan because the ALJ found them to be supported by the lack of significant mental health treatment and consistent with Plaintiff's reported daily activities. [*Id*.]. The ALJ gave some weight to the state agency physicians on the grounds that the opinions are consistent with the medical evidence of record. [*Id*.].

16

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274,

17

1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity

18

to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.   SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

19

of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance."  *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is

20

substantially supportive evidence" of the ALJ's decision.   *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff raises only one issue on appeal: that the RFC determination is not supported by substantial evidence.  [Doc. 10 at 1, 16-24].

Plaintiff argues that she has several medically determinable impairments that preclude her from performing light work on a regular and continuing basis, noting that she particularly has problems with her breathing.  [Doc. 10 at 19].  After going into a three-page recitation of her medical history mostly pertaining to her breathing, [*id*. at 19-22], Plaintiff argues that the record clearly supports that she has problems with shortness of breath and coughing and thus the evidence does not indicate that Plaintiff is capable of lifting and carrying twenty pounds occasionally and lesser amounts frequently, or that she is capable of standing and walking up to six hours in a workday.  [*Id*. at 23].  Plaintiff argues that she complained on several occasions that she has trouble breathing when it is brought on by exertion.  [*Id*.].  Plaintiff argues that these complaints, combined with her documented visits and testing is clear evidence

21

against the ALJ's assertion that she is capable of performing light work.  [*Id*.].  Finally, Plaintiff argues that her last pulmonary function testing revealed her breathing capacity reached only thirty percent of her predicted outcome and that the ALJ failed to consider this evidence.  [*Id*. (citing [R580])].

In response, the Commissioner argues that this Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner.  [Doc. 11 at 7].  The Commissioner argues that the ALJ recognized Plaintiff's breathing limitations when he determined that Plaintiff had a severe impairment of asthma/COPD/RAD, discussed Plaintiff's testimony on her breathing difficulties and in reviewing Plaintiff's treatment records.  [*Id*. at 7-9].  To Plaintiff's argument that the ALJ did not consider Plaintiff's recent pulmonary function test, the Commissioner argues that the ALJ reviewed the tests and concluded that they appeared to be invalid because they were not signed by a medical doctor.  [*Id*. at 9 (citing [R42, 580])].  The Commissioner further argues that the report itself indicated that the interpretation was valid only upon physician review and signature.  [*Id*.].  Moreover, the Commissioner argues that the report incorrectly stated Plaintiff's weight as 146 pounds, an obvious error as Plaintiff's weight was documented at 263.2 pounds in March 2013.  [*Id*. at 9-10 (citing [R578])].  To the other treatment records cited by Plaintiff, the Commissioner argues that there

22

is no requirement that the ALJ cite to every piece of evidence in the decision.  [*Id.* at 10].   The Commissioner argues that the ALJ was aware of Plaintiff's breathing problems, but observed that objective medical findings showed her symptoms were well controlled with only conservative treatment.  [*Id.*].   Finally, the Commissioner argues that the ALJ properly analyzed Plaintiff's daily activities to discount the extent of Plaintiff's complaints about the severity of her breathing limitations.  [*Id.* at 11].

First, the Court notes that the ALJ did consider Plaintiff's pulmonary function test in which it was documented that Plaintiff's FEV1 level was 30% of the predicted normal value as he specifically noted that the test "appear[ed] to be invalid as they are not signed by a medical doctor."  [R42].   As noted by the Commissioner, the test to which Plaintiff refers specifically states that "[t]his interpretation is valid only upon physician review and signature."  [R580].   Thus, it is clear that the ALJ considered this evidence and provided good reasons for rejecting it.

Even if the ALJ had not considered this evidence, Plaintiff fails to demonstrate how this, or any of the other evidence cited, supports a finding of disability, was inconsistent with the RFC, or that substantial evidence does not support the ALJ's decision.  The ALJ specifically considered Plaintiff's of shortness of breath by noting it as a severe impairment, [R38], discussing Plaintiff's testimony on the matter, [R41],

AO 72A
(Rev.8/8
2)

and discussing Plaintiff's medical records, specifically noting that Plaintiff's "main problems in functioning stem from a history of breathing problems," [*id*.]. Besides pointing to an invalid pulmonary function test, Plaintiff does not argue that there is other evidence that the ALJ failed to consider. To the extent that Plaintiff's three-page recitation of her medical history is an argument of the evidence that the ALJ failed to consider, the ALJ is not required to discuss every piece of medical evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer*, 395 F.3d at 1211).

Further, to the extent that Plaintiff argues that, based on the cited medical records, substantial evidence supports a finding of disability, as noted above, the Court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210. Moreover, the Court must affirm "[i]f the Commissioner's decision is supported by substantial evidence, . . . even if the proof preponderates against it." *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1210). Here, the Court concludes that substantial evidence supports the ALJ's decision. The ALJ's findings include that Plaintiff's pulmonary function was not near the listing level, she experienced symptomatic relief with inhalers and received only conservative treatment, and that her daily activities show functioning ability

AO 72A
(Rev.8/8
2)

consistent with the RFC.  [R41-43].  Plaintiff does not challenge these findings and the evidence is consistent with the findings.  [*See e.g.* R56-62, 222-32, 353-54, 428-29]. Therefore, the Court finds that, while there may be other evidence that preponderates against it, substantial evidence supports the RFC determination and the decision. Accordingly the decision of the Commissioner is **AFFIRMED**.

## VII.   CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in Defendant's favor.

**IT IS SO ORDERED and DIRECTED,** this the 28th day of March, 2016.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)